UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TORIBIO MENDOZA,

    Plaintiff,

v.

SPADARO, et al.,

    Defendants.

No. 2:16-cv-0855 KJM CKD P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. His remaining claim is against defendant Spadaro, a Correctional Officer at High Desert State Prison in Susanville, for denial of access to medical care in violation of the Eighth Amendment. Defendant's motion for summary judgment is before the court.

I. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the

facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## II. Medical Care Under The Eighth Amendment

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A prison official commits such a violation only when the official is deliberately indifferent to a prisoner's serious medical needs. Id.

A "serious medical need" exists when "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) citing Estelle, 429 U.S. at 104. "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez v. Smith, 203 F. 3d 1122, 1131-1132 (9th Cir. 2000), citing McGuckin v. Smith, 974 F.2d 1050 at 1059-60 (9th Cir. 1991) overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is established by (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Jett, 439 F.3d at 1096. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839.

Mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case." Hallett v. Morgan, 296 F.3d 732, 745-46; see McGuckin, 974 F.2d at 1060.

III. Plaintiff's Allegations

In his complaint, which is signed under the penalty of perjury, plaintiff alleges as follows:

1. On April 9, 2015, plaintiff informed defendant that he was suffering from extreme abdominal pain, dizziness, and nausea. Plaintiff's condition got progressively worse.

2. On April 13, 2015, plaintiff still experienced severe abdominal pain and vomiting. Also, his skin became yellow and his urine was "discolored." Plaintiff informed defendant of his condition and asked that defendant summon medical staff.

3. Defendant did not summon medical staff. Instead he summoned other correctional officers to assist defendant in gaining plaintiff's compliance with an order that plaintiff return to his cell.

4. The next day, plaintiff suffered another "medical emergency" and was taken to the institution's treatment facility. At the facility, it was determined that plaintiff required testing outside of the facility. Liver issues were diagnosed at Banner Lassen Medical Center and plaintiff remained there until tests revealed his liver function was closer to normal.

IV. Evidence Presented By Defendant

In his affidavit, defendant indicates as follows:

> On April 13, 2015, during second watch, which runs from 0600 hours to 1400 hours, I was working as a Floor Officer for Facility B, Building Four at [High Desert]. . .
>
> In the morning on April 13, 2015, I recall interacting with inmate Mendoza . . . regarding nausea complaints. I did not know of any diagnosis or treatment plan Mendoza was on, but I referred him to medical treatment with RN Bassett the same day. Mendoza was treated by RN Bassett at approximately 1100 hours.

/////

4

Mendoza returned to facility B, Building Four after the appointment. He approached me regarding his health condition and I indicated that if he needed further treatment he should go "man down" to indicate so. When an inmate goes "man down," which is to signify a medical emergency, viewing staff members will sound their alarms, indicating that an inmate needs emergency medical assistance. In this case, in the afternoon of April 13, Mendoza did not go "man down."

Soon after my interaction with Mendoza, I contacted RN Bassett to follow up regarding his health condition. RN Bassett notified me that there was nothing objectively wrong with Mendoza, but Mendoza should request further treatment if his condition worsened. In the interim, RN Bassett suggested I offer Mendoza water as he could be dehydrated. Mendoza's cellmate retrieved some water for him and a non-defendant Officer secured a fan for Mendoza's cell. Mendoza returned to his cell under his own power, and laid down.

There were no complaints from Mendoza or his cellmate regarding additional treatment, prior to my shift ending at 1400 hours on April 13, 2015. I was not working on April 14, 2015 as I was out for a doctor's appointment. . .

In her affidavit, RN Bassett asserts as follows:

On April 13, 2015, at 1100 hours, I treated Mendoza for complaints of dizziness and nausea. He walked into his treatment visit unassisted. I noted that his blood pressure was 116 over 72. The top half of the ratio is the systolic blood pressure. The systolic number for a healthy individual is less than 120. The bottom half of the blood pressure is the diastolic pressure. The diastolic number for a healthy individual is typically under 80. Thus, there were no signs of acute stress based on his blood pressure. Additionally, Plaintiff's temperature was 98.1 degrees Fahrenheit, within half of a degree of the normal 98.6. There were no signs of discomfort based on an irregular temperature.

On April 13 I also noted Mendoza was seen by a physician on April 12 and was administered Phenergan. Phenergan is given to combat nausea, vomiting, and motion sickness. I instructed Mendoza to return if his symptoms worsened and he verbalized understanding.

Based on my findings at the appointment, I would not expect Mendoza's condition to exponentially worsen between 1100 hours and 1400 hours. At 1100 hours on April 13, Mendoza did not exhibit any signs of acute stress and was receiving appropriate treatment in the meantime.

Early in the afternoon on April 13, I received a call regarding Mendoza. An Officer called to check-in on Mendoza's condition and to see if he needed any further treatment for the day. I clarified with him that based on the vitals assessed at 1100 hours, there was

/////

no need to provide Mendoza with further treatment. However, if Mendoza's treatment worsened, he was directed to follow up. Mendoza was given this information at our appointment as well.

I did not receive any requests for further treatment from Mendoza.

Dr. E. Clark, a primary care physician with the California Department of Corrections and Rehabilitation, reviewed plaintiff's medical records and provided the following information in his affidavit:

> I understand that inmate Toribio Mendoza . . . claims that Officer Spadaro prevented him from accessing medical care on April 13, 2015, leading to the worsening of his Acute HCV condition. Notably, Mendoza was not diagnosed with Acute HCV until after April 13, 2015.
>
> Acute HCV is contracted by intravenous drug use and can result in abdominal pain, nausea, and vomiting. There is no treatment plan during the initial contraction of Acute HCV because approximately twenty percent of these infections are fought off and resolved internally by the patient. The condition cannot be clinically treated in the initial period after contraction.
>
> In reviewing Mendoza's care at 1100 hours on April 13, 2015, he presented with normal vital signs. Mendoza's blood pressure was 116/72; pulse was 82; and temperature was 98.1 degrees Fahrenheit. These vital signs are not indicative of someone under acute stress. To the extent the inmate complained of urine discoloration, it would have been a sign of infection, but was not treatable. The yellowish urine color is a byproduct of the blood cells after processing in the liver. Despite his normal vitals, Mendoza was advised to return for further care if his symptoms worsened.
>
> An inmate who has contracted Acute HCV will not have his condition worsen if he does not receive care. The appropriate care for Acute HCV is diagnostic, rather than therapeutic. Therefore, there is nothing that would have worsened Mendoza's Acute HCV condition between 1100 hours and 1400 hours, such that he needed follow-up, emergent care. But, to the extent he required further care, Mendoza is allowed to request care.
>
> Inmates may request further care on a CDCR Healthcare Request Form 7362. Mendoza's eUI-IR reflects no requests for medical care on April 13, 2015.

At his deposition, plaintiff asserted that when he returned from medical on April 13, 2015, he felt something was really wrong and he was foaming at the mouth. ECF No. 42-6 at 6. At that point he indicated "man down" to defendant who told plaintiff "[d]on't worry," "[h]ave some water." Id. Plaintiff had some water and lay down. Id.

6

1  V. <u>Arguments And Analysis</u>

2  Defendant asserts there is no genuine issue of material fact as to whether defendant was at least deliberately indifferent to plaintiff's serious medical needs on April 13, 2015. The court agrees.

As indicated above, on the morning of April 13, 2015, defendant referred plaintiff to RN Bassett based upon plaintiff's complaints of nausea. Plaintiff was seen by nurse Bassett at 11:00 a.m. At some point later in the day, but before defendant ended his shift at 2:00 p.m., plaintiff again requested medical attention. The manner in which plaintiff requested medical care and the nature of plaintiff's interactions with defendant are disputed. What is not in dispute is that defendant sought and obtained guidance from RN Bassett as to how he should proceed; it is also not disputed that her instructions were followed. This being the case, there is no evidentiary basis for a finding of at least deliberate indifference.

Furthermore, defendant presents expert testimony indicating that plaintiff sustained no injury based upon the actions of defendant. Even if plaintiff's Acute HCV would have been detected before the end of defendant's shift at 2:00 p.m. on April 13, 2015, there would not have been treatment for the disease at that point. Further, plaintiff fails to indicate he was ever treated for his Acute HCV. Rather, the evidence before the court shows he was sent to Banner Lassen Medical Center for testing.[1]

VI. <u>Conclusion</u>

For all of the foregoing reasons the court will recommend that defendant Spadaro's motion for summary judgment be granted, he be dismissed from this action and this action be closed.

/////

/////

---

[1] As argued by defendant, defendant is also entitled to summary judgment based upon the "qualified immunity" doctrine because there is no genuine issue of material fact as to whether defendant violated clearly established statutory or Constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Spadaro's motion for summary judgment (ECF No. 42) be granted;

2. Defendant Spadaro be dismissed from this action; and

3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 6, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
mend0855.msj